IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. BARRETT, | Case No. 1:09-cv-01741 LJO JLT (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED |
| vs. | |
| MATTHEW CATE, et al., | (Doc. 32) |
| Defendants. | |
| _____/ | |

**I.      Procedural History**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges claims for inadequate medical treatment and excessive force in violation of the Eighth Amendment.  Also, Plaintiff claims that certain of the defendants retaliated against him in violation of the First Amendment.  Plaintiff seeks monetary damages and injunctive relief.  (Doc. 17 at 3).

On May 10, 2011, Defendants filed the motion to dismiss now before the Court.  (Doc. 32).  Plaintiff filed his opposition on June 3, 2011, (Doc. 36), to which Defendants replied on June 10, 2011.  (Doc. 38).  In response to the Court's on October 19, 2011, Defendants filed additional documents including specific grievances and responses thereto.  (Doc. 44).

On October 27, 2011, the Court issued its findings and recommendations which recommended that Defendants motion be granted and that all of Plaintiff's claims be dismissed for Plaintiff's failure

1  to exhaust his administrative remedies.  (Doc. 47).  However, on November 16, 2011, Plaintiff filed

2  objections which indicated that his claim of excessive force might have been exhausted with the filing

3  of a grievance and subsequent appeal.  Because the record before the Court did not contain the complete

4  documents related to this grievance, the Court withdrew its findings and recommendations and ordered

5  Defendants to produce all documents related to any grievances, responses, and appeals of Plaintiff's

6  claim of excessive force.  (Doc. 53).  On December 19, 2011, Defendants provided the requested

7  documents.  (Doc. 54).  As discussed below, after consideration of the submitted documents, the Court

8  finds that Plaintiff has not properly exhausted his administrative remedies related to his claim of

9  excessive force against Defendant Delanda.

10  **II.     Motion to dismiss under the PLRA for failure to exhaust administrative remedies.**

11        The Prison Litigation Reform Act ("PLRA") stipulates, "No action shall be brought with respect

12  to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

13  jail, prison, or other correctional facility until such administrative remedies as are available are

14  exhausted."  42 U.S.C. § 1997e(a).  Therefore, prisoners are required to exhaust all available

15  administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).  The Supreme

16  Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

17  they involve general circumstances or particular episodes, and whether they allege excessive force or

18  some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Further, the exhaustion of remedies

19  is required, regardless of the relief sought by the prisoner, as long as the administrative process can

20  provide some sort of relief on the prisoner's complaint.  Booth v. Churner, 532 U.S. 731, 741 (2001).

21        The California Department of Corrections and Rehabilitation ("CDCR") established an

22  administrative system for prisoners' grievances.  See Cal.Code Regs., tit. 15 § 3084, et seq.  To properly

23  exhaust the administrative remedies, a prisoner must comply with the deadlines and other applicable

24  procedural rules.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).

25        The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather

26  is an affirmative defense under which defendants have the burden of proving the plaintiff failed to

27  exhaust the available administrative remedies before filing a complaint in the District Court.  Jones,

28  supra, 549 U.S. at 216.  A motion raising a prisoner's failure to exhaust the administrative remedies is

1    properly asserted by way of an unenumerated motion under Fed.R.Civ.P 12(b).  Wyatt v. Terhune, 315

2    F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365,

3    368 (9th Cir. 1998) (per curium).  In determining whether a case should be dismissed for failure to

4    exhaust the administrative remedies, "the court may look beyond the pleadings and decide disputed

5    issues of fact" in a procedure that is "closely analogous to summary judgment."  Id. at 1119–20.  When

6    the court concludes the prisoner has not exhausted all of his available administrative remedies, "the

7    proper remedy is dismissal without prejudice."  Id.

8            **A.    Plaintiff's claims of inadequate medical care**

9            Plaintiff claims that between 2005 and continuing through 2009, Defendant's Aguilera,

10   McGuinness, McAllister, Finander and Mostafania failed to provide him adequate medical treatment in

11   violation of the Eight Amendment.

12           As to Defendant Aguilera, Plaintiff contends that following his 2005 transfer to the California

13   Medical Facility ("CMF"), Dr. Arguilera improperly delayed his medical treatment by ignoring previous

14   recommendations and approvals of Plaintiff's back surgery.  (Doc. 17 at 4).  Regarding doctors

15   McGuinness and McAllister, Plaintiff contends that in summer of 2006, both doctors ignored previous

16   recommendations and ordered duplicate testing which again resulted in further delay of his previously

17   approved back surgery. (Doc. 17 at 5).  Plaintiff contends that following his transfer from CMF to the

18   Corcoran State Prison in August of 2006, Dr. McGuinness again ignored previous recommendations for

19   surgery and indicated that his back surgery would once again need to be re-approved.  (Doc. 17 at 5).

20           In June 2009, Plaintiff was transferred from the Corcoran facility to the state prison at Lancaster

21   in June of 2009.  While at Lancaster, Plaintiff was seen by Dr. Finander, who again ignored the

22   previously ordered surgery denying Plaintiff's request for treatment.  (Doc. 17 at 6).   Plaintiff

23   additionally contends that Dr. Finander improperly ordered prison staff to take his wheelchair in August

24   of 2009 and then again in December of 2009. (Doc 17 at 6).  As to Defendant Mostafania, Plaintiff

25   contends that in May of 2009, Mostafania, a physician's assistant, cancelled Plaintiff's prescribed

26   medications for approximately thirty days though, according to Plaintiff, Mostafania had not examined

27   Plaintiff nor reviewed his medical file prior to doing so.  (Doc. 17 at 6).

28   ///

3

1    **B.    Defendant's Motion to Dismiss of Plaintiff's Claim of Inadequate Medical Care**

2         **1.    Parties contentions regarding exhaustion**

3    Defendants seek to dismiss Plaintiff's claim of inadequate medical care for Plaintiff's failure to

4    exhaust his administrative remedies.   Responding to Defendant's motion, Plaintiff contends that

5    Defendants Aguilera, McGuinness and McAllister were provided notice of his injury with the filing of

6    his 2003 Inmate Appeal ("IA") No. SVSP 03-01701.  (Doc. 36 at 9).  Plaintiff also contends that

7    additional notice was provided to Defendant McAllister with the filing of his appeal in IA No. CSPC

8    09-09-10839. (Doc. 36 at 31).  Regarding Defendant Mostafania, Plaintiff argues notice was provided

9    via the filing of his appeal in IA No. LAC-C-09-00914.  (Doc. 36 at 3 and Doc. 32-2 at 9).  Finally,

10   Plaintiff asserts that Defendant Finander received notice via the filing of his appeal in IA LAC-25-2010-

11   10284 and IA LAC-25-2010-12791.  (Doc. 36 at 3).

12        Defendants respond that Plaintiff's 2003 appeal, (SVSP 03-01701), could not have provided

13   sufficient notice to Defendants Aguilera, McGuinness and McAllister because the appeal was filed at

14   a different institution three years before the allegations occurred which gave rise to Plaintiff's claim.

15   (Doc. 38 at 2).  Additionally, Defendants argue that McAllister could not have been put on notice of

16   Plaintiff's appeal (CSPC 09-09-10839), because the appeal was filed in February  2009, and the events

17   that gave rise to Plaintiff's allegations as to McAllister occurred in 2006, three years earlier.  (Doc. 38

18   at 3).  Last, Defendants contend that Plaintiff failed to properly exhaust any appeals regarding Plaintiff's

19   claims for inadequate treatment as to Defendants Mostafania and Finander.  (Doc. 32-1 at 6).

20        **2.    Specificity and Timeliness of Inmate Appeals**

21        The Ninth Circuit has held that the standards established in Strong v. David, 297 F.3d 646, 650

22   (7th Cir.2002)) are appropriately applied to ascertain whether prisoner grievances/appeals are sufficient

23   to notify prison personnel of a problem for exhaustion purposes.  Griffin v. Arpaio, 557 F.3d 1117, 1120.

24   "[I]f prison regulations do not prescribe any particular content for inmate grievances, 'a grievance

25   suffices if it alerts the prison to the nature of the wrong for which redress is sought.  As in a notice

26   pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular

27   relief.  All the grievance need do is object intelligibly to some asserted shortcoming.'"  Johnson v.

28   Testman, 380 F.3d 691, 697 (2nd Cir. 2004) (quoting Strong v. David, 297 F.3d 646, 650 (7th

Cir.2002)).  In addition, where a prison's appeal process does not specifically require a prisoner to identify offending prison staff in an inmate grievance/appeal, the failure to do so will not be seen as a per se failure to exhaust a claim against a defendant who was not named in the prison grievance/appeal process. Jones, 549 U.S. at 200-201.  However, the grievance must "provide enough information . . . to allow prison officials to take appropriate responsive measures. [citation]" Griffin, supra, 557 F.3d at 1121.

Regarding the timeliness of inmate's appeals, the CDCR'S grievance process is initiated by submitting a CDC Form 602.  Cal.Code Regs., tit. 15 § 3084.2(a).  Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level (the "Director's Level"). Id. at § 3084.5.  Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level.  Id. at §§ 3084.5, 3084.6(c).  Director's Level responses are to be completed within sixty working days, and the time limit commences upon receipt of the appeal by the appeals coordinator. Id. at §§ 3084.6(a), (b)(4) (2009).[1]  Weekends and state holidays do not constitute working days. Id. at § 4003(j)(2).

As discussed in further detail below, Plaintiff's inmate appeals numbered IA No. SVSP 03-01701 IA No. CSPC 09-09-10839, IA No. LAC-25-09-11914, IA No.  LAC-C-09-00914, IA No. LAC 25-09-12333 and IA No. OTLA-51-08-12713, demonstrate that both the content and the time of filing of these appeals were not sufficient to "allow prison official to take appropriate responsive measures" regarding Plaintiff's complaint's claimed deficiencies in medical care.  Id.

### a.  Plaintiff's Inmate Appeals as to his claims of inadequate medical care

#### 1.  IA No. SVSP 03-01701

Plaintiff submitted IA No. SVSP 03-01701 on April 1, 2003.  (Doc. 36 at 9).  At the informal level, Plaintiff complained that the Salinas Valley State Prison (SVSP) had failed to ensure adequate treatment for his injured back and requested pain medications.  (Id.) Plaintiff also had stated that though

---

[1] As of January 2011, the applicable language was amended and moved to tit. 15 §§ 3084.8(a), (c)(3).  Although the Court is applying the version of the Code that was in effect at the time when Plaintiff filed the complaint, the Court notes that the new version is substantively the same as the previous version.

1  x-rays had been ordered, medical staff had not taken the x-rays.  (Id.)  The Second Level decision for

2  this appeal indicates, Plaintiff had subsequently been seen five times, and received medications for his

3  back injury.  (Id. at 15-16).  In addition the previously ordered x-rays were completed and an MRI had

4  been scheduled.  (Id.)  Plaintiff's appeal to the Director's Level repeated his request for treatment and

5  medication.  (Id. at 18).  The Director's Decision reviewed the findings regarding Plaintiff's care to date

6  and noted that though an MRI had been scheduled, Plaintiff had refused to submit to the MRI without

7  an increase in medication provided prior to the MRI and that Plaintiff had signed a Refusal of

8  Examination and/or Treatment form for the MRI.  (Id.)

9          Though the Director's Level decision may have sufficed to exhaust Plaintiff's general claim of

10  inadequate medical treatment and request for medications at SVSP in 2003, Plaintiff's contentions that

11  this appeal provided notice of his later distinct and more specific claims as to Defendants Aguilera,

12  McGuinness, and McAllister lack merit.  Rather than raising concerns over his initial treatment in 2003,

13  Plaintiff's litigation involves his claims that defendants, during the period of 2005 through 2006,

14  improperly re evaluated him rather than merely acceding to a different doctor's opinions. (Doc. 17 at 4-

15  5).

16          It is true that neither the PLRA nor CDC procedures require plaintiffs to repeatedly exhaust their

17  claims of ongoing inadequate medical care.  See Gomez v. Winslow, 177 F.Supp.2d 977, 978-82

18  (N.D.Cal. 2001) (rejecting argument that plaintiff had failed to exhaust his three distinct claims of

19  inadequate medical care and finding that all three claims were simply aspects of the inadequate medical

20  treatment plaintiff had notified corrections officials about in his administrative appeals.)  However, in

21  the instant case, Plaintiff's complaint alleges claims relating to different events occurring at a different

22  institution and occurring from two to three years following Plaintiff's Director's Level Appeal in

23  October of 2003.  Thus the Court finds that Plaintiff's prior appeal in 2003 was not factually related to

24  his complaints over the medical care provided by Defendants' Aguilera, McGuinness, and McAllister

25  such to provide the required notice.[2]

26  ///

27

28          [2] Moreover, the Court notes that if, indeed, Plaintiff sought to raise claims related to this 2003 grievance in this
current litigation, the claims would be barred by the statute of limitations.

1          2.      **IA No. CSPC 09-09-10839**

2          Plaintiff filed IA No. CSPC 09-09-10839 on February 22, 2009. (Doc. 36 at 31). On February

3    23, 2010, the Office of Third Level Appeals issued its decision noting that Plaintiff's back surgery had

4    been approved and was pending scheduling. (Doc. 36 at 38). Plaintiff contends that this appeal also

5    provided notice to Defendant McAllister. However, according to the allegations in Plaintiff's federal

6    complaint, Plaintiff's claims as to McAllister involve events occurring in 2006, four years prior to the

7    resolution of this appeal. Thus, this appeal cannot be said to have provided any notice to Defendant

8    McAllister.

9          3.      **IA No. LAC-25-09-11914 and IA No. LAC-C-09-00914**

10         Plaintiff contends that his claims asserted against Defendant Mostafania were exhausted with his

11   appeal in IA No. LAC-25-09-11914. Plaintiff admits that this claim was not appealed but contends that

12   because the relief he requested was partially granted he was left him with no appealable issues. (Doc

13   36 at 3). However, in this grievance, Plaintiff claimed that Defendant Mostafania had terminated his

14   morphine prescription and he sought a renewal of the prescription for morphine. (Doc. 32-2 at 15). At

15   the First Level, Plaintiff's request for morphine was denied and other medication was ordered to alleviate

16   the withdrawal symptoms from the morphine. (Id.) Thus, contrary to Plaintiff's suggestion that there

17   were no appealable issues remaining, Plaintiff's explicit request was denied. Despite this, he failed to

18   appeal to the second level, leaving this grievance unexhausted.

19         4.      **IA LAC 25-09-12333 and OTLA-51-08-12713 (Institutional**

20                      **Log Number: COR-09-08-16472)**

21         Though Plaintiff does not directly assert that this appeal provided notice to any of the defendants

22   as to his claims, because Plaintiff's opposition provides copies of these appeals, the Court addresses each

23   in turn below.[3]

24         In IA LAC 25-09-12333, Plaintiff asserts that because the appeal was partially granted, no further

25   relief was available. (Doc. 36 at 6). More specifically, Plaintiff's grievance in IA. No. 12333 requested

26   _____

27         [3]Likewise, though Plaintiff does not argue that IA No. LAC-C-09-00914 exhausted his claims as to any of the
     Defendants, the Court notes that it appears that Plaintiff similarly failed to exhaust this appeal. Plaintiff's initial grievance

28   complained that Dr. Finander instructed prison guards to confiscate his wheelchair and requested that prison officials either
     return his wheelchair or reimburse him for the chair. (Doc. 32-2 at 9). (Id.) The First Level Response did not provide
     Plaintiff's requested relief, but Plaintiff did not appeal this decision. (Doc. 32-2 at 4)

1   that he be provided a consultation with a neurosurgeon and according to the Second Level response

2   provided in December 21, 2009, Plaintiff was provided with the requested consultation. (Doc. 36 at 45).

3   However, any assertion by Plaintiff regarding the exhaustion of this grievance is unavailing because the

4   appeal was not exhausted at the time Plaintiff filed his federal complaint in October of 2009. (Doc. 1);

5   42 U.S.C. § 1997e(a) (requiring an inmate to exhaust all available administrative remedies prior to filing

6   suit in federal court).

7          Plaintiff also provides copies of the director's level decision in OTLA-51-08-12713 issued in

8   October 2009. (Doc. 36 at 27). In IA. No. 12713, Plaintiff requested: (1) an examination by a

9   Gastrointestinal (GI) specialist for abdominal pain; and (2) MRI's (with contrast) of his head and lower

10  spine for back pain. (Id.) According to Plaintiff's declaration, initially he filed this appeal on July 29,

11  2008. (Id. at 6). The director's level decision found that Plaintiff had received both his requested MRI

12  and examination by the GI specialist. (Doc. 36 at 27). Similar to Plaintiff's other filed grievances, IA

13  No. 12713 is untimely as to any of Plaintiff's allegations arising prior to 2007. (Doc. 36 at 27).

14  Additionally, the specific complaints in 2008 regarding the need for a GI specialist or MRI, are unrelated

15  to Plaintiff's current allegations arising in 2009, regarding Defendant Finander's denial of medical

16  treatment (Doc. 17 at 6), Defendant Mostafania's termination of his medications (Doc. 17 at 7) or

17  Defendant Finander's later confiscation of his wheelchair and termination of his medications (Doc. 17

18  at 7). Thus, neither IA LAC 25-09-12333 nor OTLA-51-08-12713 serve to exhaust any of Plaintiff's

19  claims.

20          **C.      Defendant's Motion to Dismiss Plaintiff's claims of excessive force**

21          Defendants next contend that Plaintiff failed to exhaust his claim of excessive force against

22  Defendant Delanda. (Doc. 32). In his initial response as well as in his objections, Plaintiff asserts that

23  his excessive force claim was exhausted by the filing of a grievance which challenged a rules violation

24  that was issued against Plaintiff, for his actions during the June 22, 2007 incident in which Plaintiff now

25  claim's Defendant Delanda used excessive force. In his opposition to Defendant's motion, Plaintiff

26  attached a Rules Violation Report and disposition of his disciplinary hearing. (Doc. 36 at 21).

27  Additionally, as discussed above, Plaintiff filed objections to the Court's findings and recommendations

28  suggesting that he had filed a grievance and appeal of his claim of excessive force, but that these

1   documents were unavailable to Plaintiff.  (Doc. 51).

2       In response to Plaintiff's objections, the Court ordered Defendants to file all documents related

3   to the incident and on December 19, 2011, Defendants filed the requested documents.  (Doc. 54).  The

4   documents provided by Defendants reflect Plaintiff initial grievance, log number  CSP -C-2-08-01699,

5   and accompanying first and second level responses.  (Doc. 54 at 4-10).

6       As noted in the Court's previous findings and recommendation, the documents originally

7   provided by Plaintiff indicated only that Plaintiff was charged with attempted battery of Defendant

8   Delanda, but was found not guilty of the charges.  (Id. at 1).  In addition, having carefully reviewed the

9   additional grievance and appeal response provided by Defendants, (Doc. 54), the Court finds the

10  documents reflect that Plaintiff challenged the process by which he was found guilty of the rules

11  violation but, however, he did not grieve the force used by Defendant Delanda.

12      As noted above, CDCR regulations require an inmate to file his prisoner grievance within fifteen

13  days of the events grieved.  Furthermore, all steps of the grievance process must be completed before

14  a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him.  Prisoners must

15  exhaust all "available" remedies, not just those that meet federal standards.  Id.  Exhaustion during the

16  pendency of the litigation will not save an action from dismissal.  McKinney v. Carey, 311 F.3d 1198,

17  1200 (9th Cir. 2002).  As the Ninth Circuit recently confirmed, "[t]o survive a motion to dismiss, the

18  inmates' claims must be both exhausted and timely.  We determine whether an inmate's claim has been

19  exhausted by reference to the prison's own grievance requirements, Griffin v. Arpaio, 557 F.3d 1117,

20  1120 (9th Cir. 2009), which necessitate that the inmate 'describe the problem and action requested,'

21  Cal.Code Regs. § 3084.2(a)." McCollum v. California Dept. of Corrections and Rehabilitation, 647 F.3d

22  870, 876 (9th Cir. 2011).

23      Here, Defendants are correct in asserting that Plaintiff's 2008 Rules Violation report as well as

24  Plaintiff's grievance and appeal concerning the rules violation and did not provide notice of a claim that

25  he was subject to excessive force by Defendant Delanda.  Moreover, Plaintiff filed multiple grievances

26  regarding his claim of inadequate medical care demonstrating that Plaintiff was well aware of the

27  grievance process procedures but still failed to bring any specific grievance as to Delanda's conduct.

28  That Plaintiff's "excessive force" claim is related to the events that gave rise to the disciplinary hearings

9

1   and rules violation and associated grievances and appeals is not sufficient.  Because Plaintiff did not

2   properly exhaust his administrative remedies, his claim against Defendant Delanda is recommended to

3   be **DISMISSED** without prejudice.

4        **C.       Exhaustion of Plaintiff's claims of retaliation**

5        Last, Defendants contend that Plaintiff failed to exhaust a grievance related to his claim of

6   retaliation raised against Defendants Wu, Finander, Fitter, and Sebok.  (Doc. 32-1 at 5-6).  In response,

7   Plaintiff's states that he twice attempted to file grievances regarding the actions of these defendants both

8   with IA No. 25-2010-10284 (Doc. 36 at 54) , filed on January 13, 2010 and with his filing of IA -25-

9   2010-12791 on July 19, 2010 (Doc. 36 at 64).  However, Plaintiff contends that prison officials made

10  any appeal of these grievances unavailable.  (Doc. 36 at 3-4 & 6-7.)  Thus, in Plaintiff's view, his ability

11  to exhaust his administrative remedies was effectively thwarted by improper screening.

12       Defendants dispute this and contend that Plaintiff's own failure to follow the procedural rules

13  explain his failure to exhaust the administrative remedy.  (Doc. 38 at 4).  Additionally, Defendants' note

14  that the documents referenced by Plaintiff, "make no reference to defendants WU or SEBOK and do not

15  demonstrate that further actions were unavailable to BARRETT."  (Doc 38 at 4).

16       The PLRA requires an inmate to exhaust only the administrative remedies that "are available."

17  42 U.S.C. § 1997e(a).  When circumstances render administrative remedies "effectively unavailable"

18  an inmate is excused from the exhaustion requirement.  Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir.

19  2010) (Warden's mistake rendered administrative remedies unavailable, thereby excusing inmate from

20  his failure to exhaust); accord Mafias v. Zen, 495 F.3d 37, 45 (2d Cir. 2007) (threats by prison officials

21  may render administrative remedies unavailable); Kana v. Step, 458 F.3d 678, 686 (7th Cir. 2006)

22  (same); Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedies unavailable where

23  prison officials erroneously told the inmate he must wait until an investigation was complete).

24  Accordingly, the Court must determine whether any improper screening of Plaintiff's appeals rendered

25  administrative remedies "effectively unavailable" so as to excuse Plaintiff from his otherwise apparent

26  failure to exhaust.

27       The Ninth Circuit has held that "if prison officials screen out an inmate's appeals for improper

28  reasons, the inmate cannot pursue the necessary sequence of appeals." Sapp v. Kimbrell, 623 F.3d 813,

10

823 (9th Cir. 2010).  In that situation, administrative remedies are "'effectively unavailable' such that exhaustion is not required under the PLRA."  Id.  To fall within this exception, the inmate must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening.  Id. In particular, the inmate must establish that (1) he actually filed a grievance that, if pursued through all the levels of the appeals process, would have sufficed to exhaust the claims he now seeks to pursue; and (2) prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations.  Id. at 823-24.  In applying this analysis the Court is additionally guided by the Ninth Circuit's instruction in Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005), which found the obligation to exhaust persists as long as some administrative remedy is available.

### 1.    Sufficiency of Plaintiff's Appeals

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."  Sapp, supra, 623 F.3d at 824.  "To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations."  Id. (citing Jones, 549 U.S. at 218).  In California, an inmate is required to "describe the problem and the action requested" in his appeal.  Cal. Code Regs. tit. 15, § 3084.2(a).  Accordingly, a inmate appeal satifies California's regulations "if it alerts the prison to the nature of the wrong for which redress is sought."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citation omitted).

In No. IA -25-2010-12791, Plaintiff filed a personnel complaint against Defendant's Fitter and Finander claiming that Fitter had made false statements regarding his medical treatment and improperly confiscated his wheelchair.  (Doc. 36 at 56-59).  According to the complaint, Finander, Fitter's supervisor, was made aware of Fitter's conduct but determined that no action was required.  (Id. at 59). This grievance was screened and returned to Plaintiff with no further action taken as the appeals coordinator found the grievance had stated "no adverse affect."  (Id. at 64).  Notably, Plaintiff's grievance No. IA -25-2010-12791, very specifically complained about the specific incident involved Defendant Finander.  He did not suggest that others were involved or that there were other acts of retaliation.

Recently, in Womack v. Bakewell, 2010 U.S. Dist. LEXIS 93346 (E.D. Cal. Sept. 7, 2010), this Court held, "California regulations do not require an inmate to specifically identify a prison official in

a grievance. Therefore a California inmate need not name a particular individual during the grievance process in order to name that person as a defendant and meet the PLRA's exhaustion requirement by the time he files suit. See <u>Jones v. Bock</u>, 549 U.S. 199, 218-219, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005)." However, here, Plaintiff's complaint regarding the specific incident in which none but Defendants Finander and Fitter were involved could not have sufficed to exhaust the claim of retaliation as to Defendants Wu or Sebok.

As for Plaintiff's grievance No. 10-10284, Plaintiff contends that prison guards confiscated his wheel chair and prison medical officials withdrew his pain medication in retaliation for his submitting a state court writ of habeas corpus. (Doc 36 at 48-49). After prison officials returned Plaintiff's grievance with a request that Plaintiff attach supporting documents, Plaintiff's resubmitted the grievance. (<u>Id.</u> at 53-54). However prison staff returned the grievance again returned because the appeals coordinator determined that the issue raised in LAC -25-10-10284 was duplicative of other appeals (ie. "1A-25-09-12333, LAC -C-09-00914, LAC -C-09-1209, LAC -C-09-14016, and LAC -C-09-1250.") (<u>Id.</u> at 54).

## 2.    Impropriety of the Screening and Exhaustion of Administrative Remedies

In California, an appeals coordinator screens each appeal before forwarding it for review on the merits. Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may screen-out an inmate appeal for several reasons, including untimeliness or incompleteness. <u>See id.</u> at § 3084.6. When an appeal is screened-out, the inmate must be notified of the reasons for the rejection and the corrections that are needed in order for the appeal to be accepted. <u>Id.</u> at § 3084.5(b)(3). In general, an inmate must file an appeal or amended appeal within fifteen working days of the disputed action or adverse decision. <u>Id.</u> at § 3084.6(c) (West 2009).

As noted above, the appeals coordinator returned LAC-25-10-10284 to Plaintiff because the issues raised in it duplicated other appeals (ie. "1A-25-09-12333, LAC-C-09-00914, LAC-C-09-1209, LAC-C-09-14016, and LAC-C-09-1250.") (Doc. 36 at 54). After this screening decision, Plaintiff took no further action.

Though the Ninth Circuit has not held explicitly that an inmate must challenge an improper screening determination, the Court has suggested as much. <u>See Sapp</u>, 623 F.3d at 826 (noting that if

plaintiff thought officials improperly screened-out his appeal, he could have contested the decision "as boilerplate text at the bottom of the screening form advised him he could do"); see also Portugal v. Felker, 2010 WL 5232995, *4 (E.D. Cal. 2010) (finding that Plaintiff's failure to obtain informal review of decision returned as duplicative resulted in a failure to exhaust); Newman v. McLean, 2009 WL 688859, *6 (N.D.Cal. 2009) ("[plaintiff did not pursue all the remedies that were available since he could have appealed the alleged improper screening out of the inmate appeal as being duplicative but failed to do so"); Smiley v. Martinez, 2010 WL 309459, *3 (N.D.Cal.2010) (plaintiff did not timely challenge the screening of his appeals based on untimeliness and duplication). These authorities are in accord with the Supreme Court's holding that proper exhaustion under the PLRA requires compliance will *all* the prison's deadlines and critical procedural rules. Ngo, 548 U.S. at 90-91; see also Griffin, 557 F.3d at 1120 ("[A] prison's own procedures define the contours of proper exhaustion.") (citing Jones, 549 U.S. at 218).

Here, prison authorities did not preclude Plaintiff from exhausting his administrative remedies, by affirmatively foreclosing the possibility of Plaintiff taking any further action. See e.g. Martinez v. Robinson, 2010 WL 3001381, *3 (N.D.Cal. 2010) (improperly told three times that his appeal was duplicative, plaintiff had no available remedy and was thus excused from further exhaustion). Instead, in the appeals coordinator's screening decision, Plaintiff was instructed specifically about how he could contest the screening decision. (Doc. 36 at 54). Plaintiff was notified that should he find that screening action's reason "inaccurate" he could return it to the appeals coordinator for reconsideration.[4]  (Id.) Plaintiff has not provided any evidence demonstrating that he took advantage of this procedure.  Nor is there any evidence showing that Plaintiff was thwarted by prison officials from utilizing this procedure. Instead, it appears from the record that Plaintiff simply abandoned LAC-25-10-10284 and opted to start the appeals process anew.  (See Doc. 46 at 6-9).

Accordingly, Plaintiff should not be excused from his failure to exhaust this appeal due to

---

[4]In addition to the boiler plate provided in the appeals coordinator's decision, (Doc. 36 at 54), the initial 602 Appeal Form, also informed Plaintiff that he could appeal any decision which had a "significant adverse affect" upon him.  (Doc. 36 at 48).  Further the form provided that if Plaintiff was "not satisfied" he could appeal the decision to the "Health Care Appeals Coordinator within 15 days of the action taken."  (Doc. 36 at 54).

1  improper screening.[5]

2  **III.      Conclusion and Recommendations**

3          Accordingly, it is **RECOMMENDED** that Defendants' May 10, 2011 motion to dismiss (Doc.

4  32) be **GRANTED.**

5          These findings and recommendations are submitted to the United States District Judge assigned

6  to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 21 days after being served with

7  these findings and recommendations, any party may file and serve written objections with the Court.

8  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and

9  Recommendations."  Any reply to the objections shall be filed and served within 14 days of the date of

10 service of the objections.  The parties are advised that failure to file objections within the specified time

11 may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

12 1991).

13

14 IT IS SO ORDERED.

15 Dated:   **December 22, 2011**                                      **/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25 _____

26     [5] On the other hand, as noted above, if the appeals coordinator had foreclosed the opportunity to contest the screening
   decision and, had failed to provide the information about how to challenge the screening decision or had subjected Plaintiff
27 to repeated screening rejections, then the appeals process would have been at an end and Plaintiff would have been free to
   argue that the improper screening decision rendered his administrative remedies unavailable.  See Sapp, 623 F.3d at 826.
28 ("We [the Ninth Circuit] do not foreclose the possibility that exhaustion might also be excused where repeated rejections of
   an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are
   effectively unavailable.").